IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KYLE THOMPSON**, Personal Representative of the Estate of Michael Eugene McGinness,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA**,<br><br>Defendant. | Case No. 3:16-cv-654-SI<br><br>**OPINION AND ORDER** |

Kevin T. Lafky and Amanda L. Reilly, LAFKY & LAFKY, 429 Court Street, NE, Salem, OR 97301. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, Susanne Luse, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Kyle Thompson ("Thompson"), as the personal representative of the Estate of Michael Eugene McGinness ("McGinness"), alleges that McGinness died as the result of negligent medical care provided by the United States Department of Veterans Affairs, Veterans Health Administration. Thompson brings this action under the Federal Tort Claims Act ("FTCA"), which provides for liability "in accordance with the law of the place where the act or

omission occurred." 28 U.S.C § 1346(b)(1). Here, Oregon law controls. Thompson bases his FTCA claim on Oregon's wrongful death statute, Oregon Revised Statutes ("ORS") § 30.020.

The parties will present this case to the Court in a bench trial. The Court delayed holding trial because of the COVID-19 pandemic, particularly its effect on the availability of medical expert witnesses. During the delay, the parties briefed two distinct legal issues for the Court. Defendant argues that: (1) Oregon's statutory cap on noneconomic damages, ORS § 31.710(1), limits Plaintiff's noneconomic damages to $500,000;[1] and (2) Plaintiff may not recover any economic damages because he did not request such damages in the Complaint or identify any such damages in his discovery responses at any time until Plaintiff submitted his proposed damages for trial well after the close of discovery.[2] Plaintiff responds that ORS § 31.710(1) does not limit Plaintiff's noneconomic damages because that statute violates the Oregon Constitution, specifically the "remedy clause" in Article I, section 10,[3] as applied here because it would leave Plaintiff without a "substantial remedy" in light of the total noneconomic damages allegedly suffered by Plaintiff.[4] Plaintiff also argues that the Court should allow Plaintiff to seek economic

---

[1] Although Plaintiff asserts that he seeks noneconomic damages up to $4.5 million, the total damages available in this case previously have been limited to $2 million under 28 U.S.C. § 2675(b). *See* ECF 63; ECF 67. This limitation is binding as the "law of the case," under which "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012).

[2] At oral argument, Defendant also argued that Plaintiff may not request noneconomic damages for McGinness's own pain and suffering because that also was not included in the Complaint or Plaintiff's discovery responses. Defendant, however, did not fully present this issue, including supporting evidence. The Court declines at this time to resolve this question, and Defendant may raise the issue again in a motion *in limine* with adequate factual support.

[3] The relevant portion of Oregon's remedy clause provides: "every man shall have remedy by due court of law for injury done him in his person, property, or reputation."

[4] Plaintiff also asserted at oral argument that the Oregon Supreme Court, in *Busch v. McInnis Waste Sys., Inc.*, 366 Or. 628 (2020), recently held that ORS § 31.710(1) was unconstitutional as applied to all types of claims, including wrongful death claims. The Court

damages, even though he previously had not given notice of any such request or prior discovery because, Plaintiff contends, Defendant will not be substantially prejudiced. For the following reasons, the Court finds that deciding the application of ORS § 31.710(1) before determining actual damages is premature. The Court also agrees with Defendant that Plaintiff may not recover economic damages based on Plaintiff's Complaint and discovery responses.

## DISCUSSION

### A.  Whether ORS § 31.710(1) Violates the Oregon Constitution as Applied

In 1987, the Oregon legislature enacted a general personal injury damages cap for noneconomic damages. This provision provides: "in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000." ORS § 31.710(1). In *Greist v. Phillips*, 322 Or. 281 (1995), the Oregon Supreme Court considered the constitutionality of this law as applied in a wrongful death action. The Oregon Supreme Court considered, among other challenges, whether this statute provided a "substantial remedy," a factor deemed necessary by that Court for a damages limitation not to violate the Oregon Constitution's remedy clause. *Id.* at 290-91. "[O]n the way" to holding that the remedy in *Greist* was substantial, the court "referenced the *amount* that the plaintiff had been awarded" by the jury. *Busch v. McInnis Waste Sys., Inc.* 366 Or. 628, 642 (2020) (emphasis in original) (explaining the holding in *Greist*). Thus, the Oregon Supreme Court in *Busch* described *Greist* as

---

does not currently read *Busch* so broadly, but this issue has not been fully briefed by the parties due to the recency of that decision.

considering the amount that the plaintiff had been awarded as relevant to determining whether the remedy as capped was "substantial" and, thus, constitutional.

Defendant argues that *Greist* holds that the sum of $500,000 is a "substantial" amount in and of itself, as a matter of law, and thus the Court should apply *Greist* and limit Plaintiff's damages to $500,000, even before trial. *Greist*, however, was a decision issued *after* a jury had determined the plaintiff's damages, and *Busch* explains that the amount of the damages determined was relevant to the court's decision in *Greist* of whether the damages limitation as applied was substantial and thus constitutional.

In the pending case, it is currently unknown what amount of noneconomic damages the Court will find, assuming liability is proven. Hypothetically, the Court could find $300,000 in noneconomic damages, in which case the pending issue under ORS § 31.710(1) is moot because the damages would be below the statutory cap. Alternatively, the Court could award $700,000 in noneconomic damages, in which case Plaintiff's argument about the lack of a substantial remedy likely would be repudiated by decisions from the Oregon Supreme Court evaluating whether a remedy was "substantial." *See, e.g.*, *Horton v. OHSU*, 359 Or. 168 (2016) (noting that only "a remedy that is only a paltry fraction of the damages that the plaintiff sustained will unlikely be sufficient"); *Howell v. Boyle*, 353 Or. 359, 376 (2013) (holding that $200,000 capped damages is substantial when $507,500 awarded in total damages); *Clarke v. OHSU*, 343 Or. 581, 608 (2007) (holding that $200,000 capped damages are not substantial when $12,000,000 awarded in economic damages and $17,000,000 awarded in total damages). In the further alternative, the Court might find $2 million in noneconomic damages, thus squarely presenting the question of whether the statutory cap is constitutional as applied in this case.

Additionally, although *Busch* involved personal injury and not wrongful death, the Oregon Supreme Court in that case used broad and sweeping language when discussing whether a damages limitation is substantial "in and of itself." *See Busch*, 366 Or. at 642-44. Indeed, the Oregon Supreme Court in *Busch* commented that in *Howell* the court had "read *Greist* as premised on . . . [the fact] that the plaintiff's award of $600,000 'was a substantial award, in and of itself,'" but the court in *Busch* also stated that it viewed those two cases (*Greist* and *Howell*) as upholding the damages limitation after looking at more than just that "relative amount." *Id.* at 643-44.[5] The Court in *Busch* concluded: "To the extent that *Greist* or *Howell* can be read to require that sole focus, we disavow them." *Id.* at 644.

This question is more nuanced than Defendant's argument implies. Accordingly, the Court declines to issue what essentially would be an advisory opinion at this time. The parties have leave to more fully discuss the issue of the constitutionality of the damages limitation in ORS § 31.710(1) as applied in this case after the Court determines as a factual matter the noneconomic damages suffered by Plaintiff.[6]

**B.  Whether Plaintiff May Seek Economic Damages**

Plaintiff requested in his Complaint "a sum of noneconomic damages in an amount to be determined not to exceed $2,000,000 together with costs and disbursements incurred herein." ECF 1 at 6. In responding to Defendant's interrogatories, Plaintiff reiterated that he was "seeking non-economic damages in an amount not to exceed $2,000,000." ECF 82 at 19.

---

[5] It is unclear precisely what the Oregon Supreme Court in *Busch* meant by the term "relative amount of the plaintiff's award" in that context.

[6] Defendant also argues that the Court should follow *Dikes for Estate of Dikes v. United States*, 353 F. Supp. 3d 1018 (D. Or. 2018), and resolve this issue as a matter of law. *Dikes*, however, was decided before *Busch*, which provides further context for understanding *Greist* and the issue of whether the amount of a damages cap can be considered substantial in and of itself.

Defendant argues that Plaintiff's pleadings and discovery responses failed to give Defendant fair notice that Plaintiff also was requesting economic damages and that Plaintiff's statement of economic damages submitted after discovery had closed and shortly before trial is prejudicial and too late. Fact discovery closed on January 5, 2018, and expert discovery closed on May 3, 2019. Defendant argues that had it known that Plaintiff would request $908,402 in economic damages, mainly in lost wages,[7] Defendant would have engaged in further discovery related to Plaintiff's ability to work and earn income.

In his Complaint, Plaintiff could have requested simply "damages," and that would have sufficed under Rule 8(a)(3). *See Seven Words LLC v. Network Sols*, 260 F.3d 1089, 1098 (9th Cir. 2001). The burden then would have been on Defendant to engage in discovery to learn the parameters and bases of Plaintiff's damages. Instead, Plaintiff's Complaint expressly requested only "noneconomic damages." Moreover, Plaintiff reiterated that he was seeking only noneconomic damages in his response to Defendant's interrogatories. This reasonably led Defendant to believe that Plaintiff was *not* requesting economic damages. Defendant relied on those representations in conducting discovery and preparing for trial. As a result, Defendant was deprived of the opportunity to conduct discovery on any economic damages that Plaintiff might have requested.

Further, Plaintiff has not requested leave to amend his Complaint. Even if the Court were to construe Plaintiff's pretrial filing regarding damages as an implied request to amend the Complaint, such a request would be subject to Rule 16(b) of the Federal Rules of Civil Procedure because the deadline for amending pleadings has long passed. *See AmerisourceBergen Corp. v.*

---

[7] As economic damages, Plaintiff seeks $906,541 in lost wages and $1,861 in medical and funeral costs, for a total of $908,402.

*Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Under those standards, Plaintiff must first show "good cause" under Rule 16(b) and then show that the proposed amendment is proper under Rule 15(a). *Johnson*, 975 F.2d at 608.

The Ninth Circuit has explained the "good cause" standard in the context of Rule 16(b) as follows:

> "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15." Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Id.* at 609 (citations omitted); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ("While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end.'" (quoting *Johnson*, 975 F.2d at 609)).

Plaintiff offers no explanation, let alone good cause, about why he previously expressly limited his relief in the Complaint to noneconomic damages. Plaintiff also did not move to amend the Complaint to state that his request was no longer so limited, and Plaintiff did not

PAGE 7 – OPINION AND ORDER

supplement or correct his discovery responses on this issue. Thus, the Court rejects Plaintiff's attempt at this stage of the litigation to seek economic damages.

## CONCLUSION

At this time, the Court declines to decide the question of whether ORS § 31.710(1) limits Plaintiff's ability to recover noneconomic damages in an amount greater than $500,000, not to exceed $2 million. That decision is premature until after the Court determines the actual amount of Plaintiff's noneconomic damages, if any. The parties may raise this question again after trial, if needed. The Court also reserves until the final pretrial conference the question of what may be included in Plaintiff's evidence of noneconomic damages. Finally, the Court precludes Plaintiff from recovering economic damages because doing so would be inconsistent with Plaintiff's Complaint and discovery responses and Plaintiff has not shown good cause under Rule 16(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

DATED this 20th day of July, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge